UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SEGAL,

                Plaintiff,

-against-

NEW YORK STATE UNIFIED COURT SYSTEM; OFFICE OF COURT ADMINISTRATION; APPELLATE DIVISION FIRST JUDICIAL DEPARTMENT; JANET DEFIORE, CHIEF JUDGE NEW YORK STATE COURT OF APPEALS,

                Defendants.

21-CV-2545 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff brings this *pro se* action, for which the filing fee has been paid, alleging that Defendants violated his federal constitutional rights.[1] He sues the New York State Unified Court System ("UCS"); the Office of Court Administration ("OCA"); the New York State Supreme Court, Appellate Division, First Department ("AD1");[2] and New York State Chief Judge Janet DiFiore. The Court dismisses the amended complaint for the reasons set forth below.

## STANDARD OF REVIEW

    The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants*

---

[1] Plaintiff submitted an application to proceed *in forma pauperis* ("IFP") with the original complaint. (ECF 1.) On April 19, 2021, the Court received a submission from Plaintiff that included the $402.00 in fees required to bring the action and a request to withdraw his IFP application. (ECF 6.) On April 26, 2021, Plaintiff filed an amended complaint. (ECF 7.) The amended complaint is the operative pleading.

[2] The Court uses these abbreviations because they are the abbreviations Plaintiff uses in the amended complaint.

*Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Moreover, the court "has the power to dismiss a complaint *sua sponte* for failure to state a claim," *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980), so long as the plaintiff is given notice and "an opportunity to be heard." *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir.1991) (per curiam); *see also Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988); 5A Wright & Miller, Fed. Prac. & Proc. § 1357, at 301 & n.3.

The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," T*riestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). Although the Court is ordinarily obligated to construe *pro se* pleadings liberally, because Plaintiff is an attorney, he is not entitled to the special solicitude usually granted to *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.").

## BACKGROUND

The following allegations are taken from the amended complaint, which is 110 pages long, including attachments, and is not a model of clarity. Plaintiff was first admitted to practice law in New York State on June 26, 1974. (*See* ECF 7, at 35.) Effective January 8, 2015, the AD1 suspended Plaintiff's license to practice law in New York for a period of one year.[3] His motions

---

[3] Court records show that effective July 19, 1993, the Appellate Division, First Department, suspended Plaintiff from practicing law for two years due to "neglect of nine client matters and failure to return retainers paid by the affected clients." *In re: Segal*, 123 A.D.3d 260, 261 (1st Dep't Dec. 9, 2014) (citing *Matter of Segal*, 190 A.D.2d 295 (1st Dep't 1993)). Plaintiff was reinstated effective February 27, 1997. *Id.* Since his 1997 reinstatement, Plaintiff received two admonitions from the Disciplinary Committee for neglect. *Id.* In 2014, the Disciplinary

2

for re-instatement have been denied ten times "without explanation." (*Id.* at 7.) He alleges that "[i]t can be inferred from the facts that the only reasons for denial are based on [Plaintiff's] persistent corruption motions and motions seeking legal redress as a [v]ictim of crimes committed by court appointees." (*Id.* at 8.)

Plaintiff asks the Court to "declare the un-constitutionality" of what he refers to as a "Pre Approval Clause" ("PAC") that the AD1 has included in orders issued against Plaintiff in the course of seeking to reinstate his license to practice law. (*Id.* at 2.) A November 9, 2018 order, which Plaintiff attaches to the complaint, includes an example of the PAC: "It is further ordered that petitioner is directed to obtain the permission of this Court prior to making further motions or applications with respect to this matter." (*Id.* at 2, 37.)

Plaintiff alleges that the AD1 began including the PAC because Plaintiff reported "misconduct, crimes and corruption" of AD1 employees; attempted to "expose the perpetrators to the proper authorities for arrest"; complained of the failure of the UCS, OCA, and AD1 "to discipline and arrest each perpetrator" and to allow the perpetrators to "continue working in the AD1"; and pointed out "the involvement of [C]hief [J]udge DiFiore in locking down and covering up an investigation in the crimes and corruption of her appointees." (*Id.* at 2-3.) The "crimes" that Plaintiff alleges that the New York State Court System and its employees and

---

Committee's Hearing Panel against sustained charges against Plaintiff "including neglect of four client matters, engaging in conduct adversely reflecting on his fitness as a lawyer, two instances of failure to communicate, as well as failure to appear at two case conferences, to comply with court orders and to timely file retainer statements." *Id.* at 261. On December 9, 2014, the Appellate Division confirmed the Hearing Panel's determination of liability, and suspended Plaintiff for one year. *Id.* at 263. In upholding the recommended suspension, the Appellate Division determined that Plaintiff's "significant disciplinary history and the seriousness of his latest misconduct" warranted such a suspension. *Id.*

3

officials committed include "official misconduct; criminal impersonation; forgery; larceny; tampering with public records, scheme to deceive; and conspiracy." (*Id.* at 3.)

As Plaintiff continued to file "persistent motions," Defendants began to "fear[] that [Plaintiff's] conduct was coming to[o] close to the hearts of defendants DiFiore, UCS, OCA and AD1," and therefore they added to the PAC as "another layer of protection to their cover-up." (*Id.* at 19.) Plaintiff alleges PAC language "appears to have been custom tailored to [Plaintiff's] conduct in exposing crime and corruption and to protect the perpetrators of the crimes." (*Id.* at 3.) He maintains that "no other litigant" has been subjected to the PAC filing restrictions. (*Id.* at 6.)

Plaintiff further asserts:

> The pre approval review is ex parte. The rules of engagement are unknown. The censorship judge is apparently subject to the unwritten rules of the chief judge, whose main objective is to protect her appointees and suppress plaintiff's motions seeking legal redress. There is no opportunity for plaintiff to be heard and to answer questions.

(*Id.*)

Plaintiff alleges that Justice Daniels, the state-court judge assigned to review Plaintiff's motions seeking permission to file, has denied each of Plaintiff's motions, but "has never personally read" them and has not provided a reason for the denials. (*Id.* at 20.) Plaintiff asserts that issuing decisions without an opinion prevents him "from exercising his right to an appeal." (*Id.* at 22.)

Plaintiff attaches to the amended complaint more than 70 pages of motions and orders from his state-court cases. Included in the documents is a June 11, 2020 order of the AD1 in response to Plaintiff's motions seeking a range of relief including sanctions on respondent state officials, transfer of his matters to the Third or Fourth Judicial Departments, an order "enjoining the Clerk of this Court and Deputy Clerk from impeding the motion," and a hearing "to

4

determine if the Deputy Clerk has committed crimes and misconduct." (*Id.* at 38-39.) The AD1 determined that Plaintiff was essentially seeking the same relief that it had denied him in prior orders, and dismissed "as baseless" his claims against the Deputy Clerk of the court, the attorneys for the Attorney Grievance Committee, and former Committee Chairpersons. (*Id.* at 39.) The court's order again included the PAC language of which Plaintiff complains.

Plaintiff also attaches motions under N.Y. C.P.L.R. 5015(a)(3) that he submitted to the AD1 on April 4, 2021. Plaintiff's cover letter, addressed to Justice Daniels, purports to seek permission to file the motions and concludes by saying, "Did you tell DiFiore she was violating the law or were you too scared? You know what is going on. Your [sic] not stupid. You are afraid of DiFiore or OCA doing something to you. I smell FEAR." (*Id.* at 47) (emphasis in original). The letter also includes a lengthy "PS" that concludes with:

> WHY DID YOU GET INVOLVED? YOU KNEW WHAT WAS GOING ON AND YOU DIDN'T STOP IT. I HOPE YOU HAVE A GOOD REASON. HISTORY TEACHES US ABOUT THOSE LIKE YOURSELF WHO ALWAYS GIVE THE SGT SCHULTZ REPLY 'I KNOW NOTHING.' LIKE MY BASKETBALL STORY – WHEN YOU PLAY WITH SHIT YOU LOOK LIKE SHIT.

(*Id.* at 48) (capitalization in original).

Plaintiff alleges in the amended complaint that on April 20, 2021, Justice Daniels denied the motions without opinion. (*Id.* at 24.) Plaintiff maintains that he "remains in the dark as to the reasons for denial." (*Id.* at 25.)

Plaintiff seeks a wide array of declaratory relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. (*Id.* at 29.) He also requests a "declaration that a preliminary injunction be granted and that respondents be enjoined from further use of the PAC." (*Id.* at 30.) It appears Plaintiff may also be seeking punitive damages. (*See id.* at 29.)

## DISCUSSION

A. **Eleventh Amendment immunity**

The Court must dismiss Plaintiff's claims against UCS, OCA, and AD1, and against Chief Judge DiFiore in her official capacity as barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Eleventh immunity bars claims for monetary damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Moreover, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366. The UCS and the AD1 are part of the judicial branch of New York State government and the OCS is an administrative agency of the state. *See id.* at 368 (holding that "the New York State Unified Court System is unquestionably an 'arm of the State' and is entitled to Eleventh Amendment sovereign immunity") (citation omitted); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (holding that OCA "is an arm of the state" and therefore enjoys the same Eleventh Amendment immunity as the state itself). Further, where a state official, such as Chief Judge DiFiore is sued in his or her official capacity, such a suit is deemed to be a suit against the state and is barred by the Eleventh Amendment. *See Amaker v. N.Y. State Dep't of Corr. Servs.*, 435 F. App' x 52, 54 (2d Cir. 2011) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)).

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims

against the UCS, OCA, AD1, and Chief Judge DiFiore in her official capacity are therefore barred by the Eleventh Amendment and are dismissed.

**B.     Claims against Janet DiFiore in her personal capacity**

Any claims that Plaintiff is asserting against Chief Judge DiFiore in her personal capacity are barred under the doctrine of absolute judicial immunity. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff's claims against Chief Judge DiFiore arise from actions taken in her judicial capacity and are therefore barred by the doctrine of absolute judicial immunity.

7

## C. The *Rooker-Feldman* doctrine

Any claims Plaintiff brings to challenge a judgment against him in state court must be dismissed because they are barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). The *Rooker-Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)*; see also Brooks-Jones v. Hones*, 916 F. Supp. 280, 281-82 (S.D.N.Y 1996) ("[A] plaintiff also may not seek reversal of a state court judgment simply by casting her complaint in the form of a civil rights action.").

Applying this doctrine in a similar case, the Second Circuit held that "[a] challenge to a state judge's exercise of jurisdiction to suspend an attorney from practice is, in effect, a request to review the state court's judgment suspending the attorney from practice, which is precluded by the *Rooker-Feldman* doctrine. *Abrahams v. App. Div.*, 311 Fed. App'x 474, 475 (2d Cir. 2009). For the same reasons, Plaintiff's claims challenging the discipline imposed on him as an attorney are barred by the *Rooker-Feldman* doctrine.

### D. State-law claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## LEAVE TO AMEND IS DENIED

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Further, Plaintiff has not asked to amend again or suggested he is in possession of facts that would cure the defects in his claims. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (per curiam) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what

9

might have been added to make the complaint viable and plaintiffs did not request leave to amend); *see also Munsif v. Barr*, No. 19-1381 (2d. Cir. 2020 (summary order) (affirming denial of leave to amend where fee-paid complaint did "not suggest any plausible claim"). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

Plaintiff has consented to receive electronic service of notices and documents in this action. (ECF 5.)

Plaintiff's amended complaint is dismissed under the doctrines of Eleventh Amendment immunity, absolute judicial immunity, and the *Rooker-Feldman* doctrine.

The Court declines to exercise supplemental jurisdiction over any state-law claims Plaintiff may be asserting. 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: May 7, 2021
          New York, New York

                                              /s/ Laura Taylor Swain
                                                LAURA TAYLOR SWAIN
                                          Chief United States District Judge